UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC.; EDWARD PARIS; MARC HAMILTON; JOSEPH HUNT; CARROLL HUNTER; EDWARD MORRIS; JOSEPH J. McCOY; AND ROBERTO LOIASIGA on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| | ) | Case No. 04-2846 (DMC) |
| Plaintiffs, | ) | Second Amended Complaint |
| | ) | |
| v. | ) | **Demand for Jury Trial** |
| | ) | |
| BRIDGE TERMINAL TRANSPORT, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**SECOND AMENDED CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION,
INCORPORATING ORDER ON INFORMAL APPLICATION, OCTOBER 14, 2005**

The Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Edward Paris;

Marc Hamilton, Joseph Hunt, Carroll Hunter, Edward Morris, Joseph J. McCoy and Roberto

Loiasiga (collectively "Plaintiffs," or collectively for Paris, Hamilton, Hunt, Hunter, Morris,

McCoy and Loiasiga "Contracting Plaintiffs"), bring this action seeking declaratory, injunctive

and monetary relief on behalf of themselves and all others similarly situated against Defendant

Bridge Terminal Transport, Inc. ("BTT" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1.  BTT is a motor carrier that provides transportation of property in interstate commerce under authority issued by the U.S. Department of Transportation ("DOT").  BTT transports property in equipment leased from independent truckers (known as "owner-operators") including the Contracting Plaintiffs and others similarly situated. Under federal law and regulations, "authorized motor carriers" such as BTT may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12 ("Part 376").  *See* 49 C.F.R. § 376.11(a).  Authorized motor carriers are required by regulation to comply with the mandatory lease provisions (49 C.F.R. § 376.12), and forbidden to operate through leases not in compliance.

2.  A person injured on account of an authorized carrier's violation of or failure to comply with the federal leasing regulations may bring an action seeking injunctive relief and damages against such authorized carrier pursuant to 49 U.S.C. §§ 14704(a)(1) and (2), as well as attorneys' fees and costs as authorized by 49 U.S.C. § 14704(e).

3.  Each of the Contracting Plaintiffs entered into federally-regulated lease agreements (the "Lease Agreements") with Defendant.

4.  Plaintiff Morris entered into a revised lease agreement ("Revised Lease Agreement") with Defendant on August 22, 2005.

5.  Plaintiffs allege that the written Lease Agreements and Revised Lease Agreements, whereby BTT has leased trucking equipment from owner-operators, do not meet the requirements of Section 376.12.  Numerous terms required by Section 376.12 are *missing* from the Lease Agreement.  Other terms in the Lease Agreement and Revised Lease

Agreement *conflict* with provisions of Section 376.12.  In addition, Plaintiffs allege that

BTT has engaged in a pattern and practice of ignoring its obligations under 49 C.F.R.

Part 376, resulting in violations of those regulations and its breach of its lease agreements

with the named Plaintiffs and others similarly situated.

6.     BTT has for a long time engaged in a pattern and practice of operating in violation of its

regulatory obligations to Contracting Plaintiffs and others similarly situated, and

continues to do so.

7.     This civil action seeks to have this Court:

   a.     Declare BTT's practices to be in violation of the Truth-in-Leasing regulations;

   b.     Enjoin BTT from continuing to operate in violation of Truth-in-Leasing

          regulations;

   c.     Order that BTT provide an accounting of all revenues;

   d.     Award Plaintiffs damages with interest; and

   e.     Order the disgorgement of sums by which BTT has been unjustly enriched by

          operating in violation of the Truth-in-Leasing regulations.

## JURISDICTION AND VENUE

8.     The causes of action alleged here arise under the laws of the United States regulating

commerce and the activities of motor carriers engaged in the transportation of property in

interstate commerce, including 49 U.S.C. §§ 13103, 14102 and 14704(a)(1) and (2), and

49 C.F.R. § 376 *et seq*.

9.     Jurisdiction of this matter is granted to this court by 28 U.S.C. § 1331 (federal question

jurisdiction), and § 1337 (proceedings arising under an act of Congress regulating

commerce).  Violation of the federal regulations is privately actionable pursuant to

3

49 U.S.C. §§ 14704(a)(1) and (2).

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  BTT is incorporated in

the State of New Jersey and maintains a place of business in this district and a substantial

part of the events giving rise to the claims raised herein occurred in this district or state.

## PARTIES TO THE ACTION

11.   Plaintiff Owner-Operator Independent Drivers Association, Inc. ("OOIDA") is a business

association of professional truck drivers including drivers who own and operate motor

vehicles, commonly known as "owner-operators."  Owner-operators are small business

truckers who own and operate a truck tractor (of a tractor-trailer combination).  They

lease their tractor and driving services to motor carriers (such as Defendant), agreeing to

move items in interstate commerce in exchange for specified compensation.  OOIDA is a

not-for-profit corporation incorporated in the State of Missouri, with its headquarters

located at 1 N.W. OOIDA Drive, P.O. Box 1000, Grain Valley, Missouri  64029.

OOIDA was founded in 1973 and now has over 129,000  members residing in all fifty

(50) states and in Canada.  OOIDA brings this action in a representative capacity and

seeks declaratory and injunctive relief on behalf of all owner-operators including those

who are its members.

12.   Contracting Plaintiff Edward Morris, a citizen of the Commonwealth of Virginia, is an

owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an

independent truck owner-operator and a member of OOIDA.  Plaintiff Morris has

provided, and continues to provide, motor vehicle equipment (a truck tractor) to

Defendant BTT under the terms of a Lease Agreement (Exhibit A) and a Revised Lease

Agreement (Exhibit B).

4

13.    Contracting Plaintiff Edward Paris, a citizen of the State of New Jersey, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an independent truck owner-operator and a member of OOIDA.  Plaintiff Paris has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of a Lease Agreement similar to that contained in Exhibit A.

14.    Contracting Plaintiff Joseph Hunt, a citizen of the Commonwealth of Pennsylvania, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an independent truck owner-operator and a member of OOIDA.  Plaintiff Hunt has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of the Lease Agreement similar to that contained in Exhibit A.

15.    Contracting Plaintiff Carroll Hunter, d/b/a MAC Enterprises Inc., a citizen of the Commonwealth of Virginia, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an independent truck owner-operator and a member of OOIDA.  Plaintiff Hunter has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of a Lease Agreement similar to that contained in Exhibit A.

16.    Contracting Plaintiff Marc Hamilton., a citizen of the State of Florida, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an independent truck owner-operator and a member of OOIDA.  Plaintiff Hamilton has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of a Lease Agreement similar to that contained in Exhibit A.

17.    Contracting Plaintiff Joseph J. McCoy, a citizen of the Commonwealth of Virginia, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an

5

independent truck owner-operator and a member of OOIDA.  Plaintiff McCoy has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of a Lease Agreement similar to that contained in Exhibit A.

18.     Contracting Plaintiff Roberto Loiasiga, a citizen of the State of New Jersey, is an owner-operator who has leased motor vehicle equipment, with a driver, to BTT.  He is an independent truck owner-operator and a member of OOIDA.  Plaintiff Loiasiga has provided motor vehicle equipment (a truck tractor) to Defendant BTT under the terms of a Lease Agreement similar to that contained in Exhibit A.

19.     Contracting Plaintiffs and other similarly situated owner-operators are "owners" within the meaning of 49 C.F.R. § 376.2(d), and "lessors" within the meaning of 49 C.F.R. § 376.2(f).

20.     Each lease agreement entered into between the Contracting Plaintiffs and other similarly situated owner-operators, on the one hand, and Bridge Terminal Transport on the other, constitutes a "lease" within the meaning of 49 C.F.R. § 376.2(e).

21.     The vehicles Contracting Plaintiffs, and other similarly situated owner-operators, provided to BTT for use are "equipment" within the meaning of 49 C.F.R. § 376.2(b).

22.     Contracting Plaintiffs seek declaratory, injunctive, damages and restitutionary relief on behalf of themselves and all others similarly situated.

23.     BTT is a New Jersey corporation doing business in New Jersey.  BTT is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

## CLASS ACTION ALLEGATIONS

24.     This action is brought by Plaintiffs as a national class action, on their own behalf and on behalf of all others similarly situated.

6

25. **Class Description**.  Plaintiffs seek to represent a class of individuals (hereinafter "Class") consisting of all owner-operators in the United States who, after June 2000, and through the pendency of this proceeding, had or have leases with BTT that are subject to the federal regulations in Part 376, Code of Federal Regulations.

26. **Impracticability of Joinder**.  There are thousands of individual owner-operators  who are members of this Class.  These individual owner-operators are residents of various states and travel continuously, and are, therefore widely dispersed geographically.  Thus, joinder of all potential Class Members would be impracticable.

27. **Commonality**.  BTT has acted toward the Class Members in a way that affects all members of the Class similarly and, accordingly, questions of fact and law are common to the Class, as are questions of the liability of BTT, and the appropriate declaratory, injunctive and restitutionary relief.

28. **Typicality**.  The claims of the Plaintiffs are typical of the claims of the potential Class as a whole.

29. **Fair and Adequate Representation**.  Plaintiffs are capable of fairly and adequately protecting the interests of the Class.  Additionally, OOIDA has previously participated as class representative on behalf of owner-operators in several cases, and counsel for Plaintiffs (The Cullen Law Firm, PLLC) has been appointed Class Counsel in similar class actions throughout the country.

30. **Class Certification Appropriate Under Rule 23(b)(2)**.  Defendant has acted and/or failed to act on grounds generally applicable to the potential class as a whole, as described further herein.  Thus, injunctive and declaratory relief is appropriate with respect to the potential class as a whole, making class certification appropriate under Fed.

7

R. Civ. P. 23(b)(2).  Further, because the restitutionary relief sought:

a.  will flow directly to the entire class  from the requested declaration of regulatory violations,

b.  is capable of computation by reference only to objective standards,

c.  is capable of computation without reference to intangible, subjective differences between Class Members,

d.  does not introduce new and substantial legal or factual issues,

e.  can be calculated (through use of standardized formulas or restitution grids) by reference to data readily available within BTT's normal business records, and

f.  will not require additional member-specific hearings,

it is incidental to the requested declaratory and injunctive relief.

31.  **Class Certification Appropriate Under Rule 23(b)(3)**.  The questions of law and fact enumerated in the counts below are common to all class members, and predominate over any questions affecting individual members.  Therefore, a class action is superior to other available methods for the fair and efficient adjudication of the claims herein.

32.  **Additional Factors Favoring Class Certification**.  Other factors favoring the certification of this suit as a class action include:

a.  the amounts of restitution for each of the individual owner-operators are relatively small, so that individual members of the Class would not find it cost-effective to bring individual claims;

b.  requiring individuals to prosecute separate actions would substantially impair or impede the individual members' ability to protect their own interests, and may impair the ability of other members of the Class to protect their interests;

8

c.     on information and belief, there is no litigation already commenced by Class

Members concerning the causes of action raised in this Complaint;

d.     it is desirable to concentrate the individual members' claims into one forum

because, given the amount in controversy, to require these claims to be brought in

separate forums would effectively prevent individuals from bringing claims to

establish their rights and recover restitution of those profits generated through the

abuse of their rights;

e.     no substantial difficulties are likely to be encountered in managing this class

action; and

f.     Plaintiffs are represented by counsel which have the experience of representing

their clients in numerous class actions involving owner-operators and other small

business truckers nationwide.

## FACTUAL ALLEGATIONS

33.     The Lease Agreements that Defendant entered into with Contracting Plaintiffs ***fail to***

***include*** language required by the leasing regulations, to wit:

a.     49 C.F.R. § 376.12(d) requires that the "amount to be paid by the authorized

carrier for equipment and driver's services shall be clearly stated on the face of the

lease or in an addendum to the lease."  Defendant's Lease Agreements do not

contain provisions setting forth the terms of compensation.

b.     49 C.F.R. § 376.12(g) requires that regardless of the method of compensation, the

lease must permit the lessor to examine copies of the documents from which rates

and charges are computed.  Defendant's Lease Agreements do not contain this

provision.

9

c.    49 C.F.R. § 376.12(h) provides that the lease "clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation . . . together with a recitation as to how the amount of each item is to be computed."  The lease must also recite that the lessor is to be afforded copies of those documents which are necessary to determine the validity of the charge.  Defendant's Lease Agreements do not contain these provisions.

d.    49 C.F.R. § 376.12(j) provides that "if the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier . . . the lease shall clearly specify that the authorized carrier will provide lessor with a certificate of insurance for each such policy.  Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy , the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount of each type of coverage for which the lessor may be liable."  Defendant's Lease Agreements do not contain these provisions.

e.    49 C.F.R. § 376.12(i) provides that the "lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease agreement."  Defendant's Lease Agreements do not contain this provision.

34.    Defendant BTT's Lease Agreements contain provisions that conflict with 49 C.F.R. § 376.12.  By way of illustration and not limitation:

a.    Defendant's leases do not disclose the amount by which the deductions from the owner-operator's compensation exceed the actual cost of the items initially paid

10

for by the Defendant.  The leases do not contain recitations as to how these deductions from compensation are calculated all in violation of 49 C.F.R. § 376.12 (h);

b.  Defendant BTT's Lease Agreements provide that *all* indebtedness may be deducted from a driver's escrow, which provision conflicts with BTT's obligation to specify with particularity the items for which the escrow can be used as required by 49 C.F.R. § 376.12 (k)(2).

c.  Defendant's Lease Agreements states that, BTT agrees to provide, "upon reasonable written request, a written summary of accounting for any all transactions involving the Escrow Fund."  This provision conflicts with 49 C.F.R. § 376.12 (k)(3), which requires that BTT "shall provide an accounting to the lessor" whether or not such accounting is specifically requested by the lessor.

d.  Defendant's Lease Agreements states that "[p]rovided the terms and conditions of this Contract have been fulfilled, at the conclusion of this Contract, all monies and assets remaining in the Escrow Fund (after all reductions or charges provided herein) will be returned to Contractor.  When such Escrow Fund monies and assets are returned, BTT may withhold amounts sufficient to satisfy any other outstanding obligations of Contractor to BTT as specified in this Contract."  This provision conflicts with BTT's obligation to specify with particularity the items for which the escrow can be used as required by 49 C.F.R. § 376.12 (k)(2) and the requirement of 49 C.F.R. § 376.12 (k)(6) that the lease must state that the escrow fund shall be returned no later than 45 days after lease termination.

e.  Defendant's Lease Agreements states that "[u]pon written demand, BTT shall

11

provide to Contractor a written final accounting of all withholdings from the Escrow Fund." This provision conflicts with the requirements expressed in § 376.12 (k)(6) that upon the return of the escrow fund the carrier "shall provide a final accounting to the lessor of all such final deductions made to the escrow fund," whether or not such accounting is specifically requested by the lessor.

f.      Defendant's Lease Agreements states that "Contractor, upon termination of this Contract, will forfeit his account balance of the Escrow Fund if all applicable identification materials and permits are not returned within (3) days of demand for return by BTT." This provision conflicts with 49 C.F.R. § 376.12 (k)(6), which requires that, "in no event shall the escrow fund be returned later than 45 days from the date of [lease] termination."

35.    The Revised Lease Agreement that Defendant entered into with Contracting Plaintiff Morris *fails to include* language required by the leasing regulations, to wit:

a.      49 C.F.R. § 376.12(d) requires that the "amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum to the lease." Defendant's Revised Lease Agreement provides compensation rates but then provides such compensation rates may be changed by BTT orally, and at BTT's sole discretion.   As a result, the Revised Lease Agreement fails to clearly state the amount of compensation on the face of the lease or in an addendum to the lease.

36.    Defendant BTT's Revised Lease Agreements contain provisions that conflict with 49 C.F.R. § 376.12.  By way of illustration and not limitation:

a.      (Deleted in compliance with Order on Informal Application, October 14, 2005.)

b.      Defendant's Revised Lease Agreement, Schedule B, purports to contain compensation rates payable to owner-operators.  However, subsection C of Schedule B states that "[t]he base compensation payable for any moves, if different from any provided in Sections 1(A) or (B) above, shall be communicated by BTT to Contractor at the time the move is offered – orally (including by phone), electronically or in hard copy form."  This provision allows BTT to change compensation rates at its sole discretion, and to "offer" new rates to owner-operators.  Schedule B violates 49 C.F.R. § 376.12(d) in that it fails to clearly state the amount of compensation on the face of the lease or in an addendum to the lease;

c.      Defendant's Revised Lease Agreement states that BTT states that BTT makes deductions from owner-operator compensation that exceed the actual cost of the items initially paid for by the Defendant.  These excessive charge-backs are in violation of 49 C.F.R. § 376.12 (h);

d.      Defendant's Revised Lease Agreement provides that BTT may change the amounts subject to charge-back against compensation without any revision to Revised Lease Agreement or any addendum to the lease agreement.  This provision violates 49 C.F.R. § 376.12 (h);

e.      Defendant BTT's Revised Lease Agreements provide that *all* indebtedness may be deducted from a driver's escrow, which provision conflicts with BTT's obligation to specify with particularity the items for which the escrow can be used as required by 49 C.F.R. § 376.12 (k)(2).

13

## COUNT I

### Unlawful Provision of Transportation Services by BTT

37.    Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 36.

38.    BTT has entered into Lease Agreements and Revised Lease Agreements with the Contracting Plaintiffs herein and others similarly situated for equipment that it does not own.  These leases do not comply with the provisions of 49 C.F.R. § 376.12, in that specific provisions required by regulation are not included in the lease Agreements, and other provisions that are included in the lease agreements contain terms that are in conflict with Section 376.12.

39.    BTT's performance of transportation services, requiring DOT authorization, in equipment that it does not own under the aforementioned deficient lease agreements is a violation of 49 C.F.R. § 376.11(a).

## COUNT II

### Failure to Disclose and Comply With Compensation Provisions
### (in violation of 49 C.F.R. §§ 376.12 (d) and (g))

40.    Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 39 above.

41.    Upon information and belief, prior to 1997 BTT disclosed the amount to be paid by the authorized carrier for equipment and driver=s services in an addendum to the regulated lease agreement.

42.    Beginning in approximately 1997, BTT withdrew all prior addenda or schedules stating the rate or amount of compensation to be paid to Contracting Plaintiffs.

43.    Subsequent to withdrawing all addenda or schedules pertaining to compensation, BTT has failed to state, in its Lease Agreements, the terms of compensation to be paid by BTT

14

for equipment and driver's services of the Contracting Plaintiffs.

44. The Lease Agreements in effect between BTT and Contracting Plaintiffs beginning in 1997 state that BTT shall pay the Contracting Plaintiffs according to the terms of "Schedule B."

45. BTT has failed to provide a "Schedule B" to Contracting Plaintiffs since 1997.

46. Plaintiffs, through counsel, contacted BTT's counsel in October of 2003 and specifically informed BTT's counsel that the carrier's failure to state, in its written lease agreement, the terms of owner-operator compensation to be paid by BTT was a serious violation of federal law.

47. Plaintiffs' counsel demanded that BTT take immediate steps to comply with the federal Truth-in-Leasing regulations.

48. In August 2005 BTT forced Plaintiff Morris and other similarly situated owner-operators to sign a Revised Lease Agreement.

49. The terms of the Revised Lease Agreement were not subject to negotiation.

50. The Revised Lease Agreement contains a Schedule B. The Schedule B purports to state compensation rates, but then provides that BTT may "offer" compensation rates different from those contained in the Schedule and that owner-operators may "accept" the different rates.

51. The Revised Lease Agreement also states that "Rates offered to Contractor for particular moves shall be drawn from computerized or hard-copy BTT contractor-rate schedules in existence at the time of the offer. Due to the complexity and variability of the marketplace in which BTT operates, these schedules are too detailed and subject to change to be attached to this Contract."

15

52.     These provisions allow BTT to unilaterally change compensation rates at will and in its sole discretion.  These provisions also allow BTT to change compensation rates orally and impermissibly allows BTT to base compensation terms on a "contractor-rate schedule" that is not part of the lease or an addendum to the lease.

53.     As a result, BTT's Revised Lease Agreement fails to clearly state the amount of compensation on the face of the lease or in an addendum to the lease.

54.     In addition, BTT receives from shippers payment of monies to satisfy various surcharges, including, but not limited to, a hazardous material surcharge, a weekend surcharge, a holiday surcharge, an after hours surcharge, a detention surcharge, excessive weight or length surcharge, and a fuel surcharge.

55.     BTT has retained for itself the bulk of these surcharge monies received from shippers.

56.     BTT's failure to provide compensation terms in its lease agreements, including terms related to surcharges, and its failure to provide Contracting Plaintiffs with a "Schedule B," violates 49 C.F.R. § 376.12(d).

57.     As a direct and proximate result of BTT's violations of 49 C.F.R.  §§ 376.12(d) and (g), the Contracting Plaintiffs have suffered financial injury.

58.     As a direct and proximate result of BTT's violations of 49 C.F.R. §§ 376.12(d) and (g), BTT has been unjustly enriched.

## COUNT III

### Undisclosed, Undocumented and Excessive Charge-backs to Compensation (in violation of 49 C.F.R. § 376.12 (h))

59.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 58 above.

60.     Under 49 C.F.R. § 376.12(h), the Lease Agreement *must* "clearly specify" all charge-back

16

items for which Defendants deduct from Lessors' compensation, together with a recitation (or breakdown) as to how the amount of each item is to be computed. Additionally, the regulation mandates that the owner-operator "shall be afforded copies of those documents which are necessary to determine the validity of the charge." 49 C.F.R. § 376.12(h).

61. Comdata, Inc is a Tennessee corporation that provides certain electronic credit and banking facilities to motor carriers. Comdata, Inc. issues cards to motor carriers for use by their drivers that are used to identify drivers eligible to enter transactions against the motor carrier's credit facility. Drivers use the Comdata cards to obtain electronic transfer of funds from the motor carrier and to acquire fuel and other items and services while on the road. Comdata imposes transaction charges on motor carriers for the use of its cards.

62. BTT has entered into an arrangement with Comdata, Inc., which, among other things, is intended to facilitate the acquisition of fuel by Contracting Plaintiffs and other owner-operators from various truck stops throughout the nation. Pursuant to BTT's arrangement with Comdata, Inc., Contracting Plaintiffs and other owner-operators procure fuel at various truck stops upon presentation of the Comdata Card issued to them by BTT. Comdata, Inc. notifies BTT of fuel acquired by Contracting Plaintiffs and other owner-operators using the Comdata card.

63. BTT pays for the fuel acquired by the Contracting Plaintiffs and other owner-operators by making payments either to Comdata, Inc. or directly to the truck stop chain that dispensed the fuel to owner-operators. BTT then charges back an amount for such fuel against the compensation due Contracting Plaintiffs and other owner-operators who use the Comdata card.

17

64.    Comdata charges BTT a fee each time Contracting Plaintiffs and other owner-operators use its services.   BTT imposes a charge-back against the compensation of the Contracting Plaintiffs and other owner-operators of $3.00 to $ 4.00 per transaction. These charge-backs exceed the amount actually paid by BTT to Comdata for transaction fees.

65.    BTT failed to afford Contracting Plaintiffs copies of those documents which are necessary to determine the validity of the charge-backs by BTT against Contracting Plaintiffs' compensation for transaction fees initially paid by BTT in violation of 49 C.F.R. § 376.12(h).

66.    The Lease Agreement does not disclose either that BTT charges-back a "transaction fee" relating to the purchase of fuel using a Comdata card or that the amount by which the charge-backs by Defendant against Contracting Plaintiffs' compensation for Comdata fees exceed the amount initially paid by Defendant for such fees.

67.    Defendant's Revised Lease Agreement states when an owner-operator uses a Comdata card to purchase fuel, BTT deducts "an admin fee of $ 3.25 (of which $ 2 is paid to BTT to cover administrative processing costs and $ 1.25 is paid to the third-party issuer)" from owner-operator compensation.

68.    Defendant's Revised Lease Agreement states that BTT makes charge-backs for fuel and fuel-related transaction fees from owner-operator's compensation that exceed the actual cost of the items initially paid for by the Defendant.   These excessive charge-backs are in violation of 49 C.F.R. § 376.12 (h).

69.    BTT illegally profited from undisclosed, undocumented and excessive charge-backs related to the purchase of fuel and fuel-related transaction fees in violation of 49 C.F.R.

18

§ 376.12(h).

70.    BTT charged back against Contracting Plaintiffs' compensation amounts for the purchase of non-trucking liability insurance and physical damage insurance.

71.    BTT charged-back against Contracting Plaintiffs' compensation, and other owner-operators similarly situated, amounts for the purchase of non-trucking liability insurance and physical damage insurance that exceeded the amount initially paid by Defendant for such insurance.

72.    The Lease Agreement does not disclose the amount by which the charge-backs by Defendant against Contracting Plaintiffs' compensation for insurance exceed the amount initially paid by Defendant for such fuel in violation of 49 C.F.R. § 376.12(h).

73.    Defendant failed to afford Plaintiffs copies of those documents which are necessary to determine the validity of the charge-backs by Defendant against Contracting Plaintiffs' compensation for insurance purchases in excess of amounts initially paid by Defendant for such insurance in violation of 49 C.F.R. § 376.12(h).

74.    Defendant's Revised Lease Agreement states when insurance is purchased from BTT, BTT deducts monies for "administrative costs" from owner-operator compensation.

75.    Defendant's Revised Lease Agreement states that BTT makes charge-backs for insurance from owner-operator compensation that exceed the actual cost of the items initially paid for by the Defendant.  These excessive charge-backs are in violation of 49 C.F.R. § 376.12 (h).

76.    Defendant illegally profited from undisclosed, undocumented and excessive charge-backs related to the purchase of insurance in violation of 49 C.F.R. § 376.12(h).

77.    As a direct and proximate result of BTT's violations of 49 C.F.R. § 376.12(h),

Contracting Plaintiffs have suffered financial injury, and BTT has been unjustly enriched.

## COUNT IV

### Unauthorized Deduction of Escrow Funds
### (in violation of 49 C.F.R. § 376.12(k))

78. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 77 above.

79. BTT's Lease Agreements purport to contain an "Escrow Fund" provision.

80. Pursuant to the terms of this escrow provision, the Contracting Plaintiffs were required to pay $500 or $1000 into an escrow fund.

81. BTT's Lease Agreements states that, BTT agrees to provide, "upon reasonable written request, a written summary of accounting for any all transactions involving the Escrow Fund."

82. This provision conflicts with 49 C.F.R. § 376.12 (k)(3), which requires that BTT "shall provide an accounting to the lessor" whether or not such accounting is specifically requested by the lessor.

83. BTT's Lease Agreement states that "[p]rovided the terms and conditions of this Contract have been fulfilled, at the conclusion of this Contract, all monies and assets remaining in the Escrow Fund (after all reductions or charges provided herein) will be returned to Contractor.  When such Escrow Fund monies and assets are returned, BTT may withhold amounts sufficient to satisfy any other outstanding obligations of Contractor to BTT as specified in this Contract."

84. Under this provision, Defendant purports to be able to deduct from Contracting Plaintiffs' escrow funds amounts for any and all supposed debts allegedly owed to BTT.

85. This provision conflicts with BTT's obligation to specify with particularity the items for

which the escrow can be used as required by 49 C.F.R. § 376.12 (k)(2) and the

requirement of 49 C.F.R. § 376.12 (k)(6) that, upon the return of the escrow fund the

carrier "shall provide a final accounting to the lessor of all such final deductions made to

the escrow fund."

86.     The Revised Lease Agreement provides for an "Escrow Fund."

87.     The Revised Lease Agreement states that "The specific items to which the Escrow Fund

shall apply are, at the time of the final accounting following termination of this Contract,

all advances, expenses, taxes, fees, fines, penalties, damages, losses, or other amounts

paid, owed or incurred by BTT – or owed by Contractor to a third party under a purchase

or rental contract – that are Contractor's responsibility under the Contract (specifically,

the charge-back and deduction items set forth in Schedule D and other attachments

(herafter "Escrow Items") to the extent that the amounts owned by Contractor for such

Escrow items exceed Contractor's Settlement Compensation."

88.     Under this provision, Defendant purports to be able to deduct from Contracting Plaintiffs'

escrow funds amounts for any and all supposed debts allegedly owed to BTT.

89.     This provision conflicts with BTT's obligation to specify with particularity the items for

which the escrow can be used as required by 49 C.F.R. § 376.12 (k)(2) and the

requirement of 49 C.F.R. § 376.12 (k)(6) that, upon the return of the escrow fund the

carrier "shall provide a final accounting to the lessor of all such final deductions made to

the escrow fund."

90.     BTT also deducts from Contracting Plaintiffs' compensation, amounts for a

"maintenance fund" under the Lease Agreement and for a "Voluntary Maintenance and

Reserve Fund" under the Revised Lease Agreement.

21

91. These maintenance funds are escrow fund pursuant to 49 C.F.R. § 376.2(l).  While in the possession of BTT, BTT failed to pay interest as required by 49 C.F.R. § 376.12(k).

92. As a direct and proximate result of BTT's violations of 49 C.F.R. § 376.12(k), the Contracting Plaintiffs have suffered damages.

93. As a direct and proximate cause of BTT's violations of 49 C.F.R. § 376.12(k), BTT has been unjustly enriched to the extent it has retained escrow funds it was obligated to return to the class.

## COUNT V

### Restitution Based Upon Unjust Enrichment

94. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 93 above.

95. BTT has failed to set forth the amount to be paid by the authorized carrier for equipment and driver's services on the face of its lease or in an addendum to its lease.  As set forth with more particularity above, they fail to include critical terms mandated by the Truth-in-Leasing regulations, and terms critical to any contract for services, e.g. price or compensation.

96. BTT received the full benefit of the transportation services rendered by the Contracting Plaintiffs but illegally hid from them the information necessary to determine the fair value of those services to BTT.

97. BTT paid Contracting Plaintiffs less than fair value for the services it received.

98. By operating in violation of Truth-in-Leasing regulations, i.e. by withholding information, by under-compensating, and through excessive charge-backs against compensation, BTT has unjustly enriched itself.  It further enriched itself by investing or otherwise using those ill-gotten funds.

22

99.   As a result of BTT's unjust enrichment, Contracting Plaintiffs and class members are entitled to restitution.

## COUNT VI

### Unlawful and Unconscionable Choice of Law and Choice of Forum Provisions

100.  Plaintiffs re-allege and incorporate the allegations of paragraphs 1through 99 above.

101.  The Revised Lease Agreement provides that "all of the terms and conditions contained herein will be interpreted in accordance with, and governed by, the laws of the United States and of the State of Florida."

102.  Contracting Plaintiff Morris has no contracts with the State of Florida through his commercial relationship with BTT.

103.  On information and belief, owner-operators leased to BTT out of all BTT terminals (with the exception of BTT's terminal in Florida) have no contacts with the State of Florida through their commercial relationship with BTT.

104.  The choice of law provision contained in the Revised Lease was not subject to negotiation or bargaining and was, in fact, drafted solely by BTT.

105.  The Florida choice of law provision violates the statutes and public policy of the State of New Jersey and is therefore unlawful.

106.  The Florida choice of law provision is unconscionable and invalid.

107.  The Revised Lease required that the courts of Charlotte, North Carolina "shall have exclusive jurisdiction" over any all suits related to the Revised Lease.

108.  The choice of forum provision contained in the Revised Lease was not subject to negotiation or bargaining and was, in fact, drafted solely by BTT.

109.    BTT is a New Jersey corporation with significant contacts with New Jersey.

110.    The choice of forum provision violates the statutes and public policy of the State of New Jersey and is therefore unlawful.

111.    The choice of forum provision is unconscionable and invalid.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., EDWARD PARIS, MARC HAMILTON, JOSEPH HUNT, CARROLL HUNTER, EDWARD MORRIS, JOSEPH McCOY, AND ROBERTO LOIASIGA, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.    Enter a judgment declaring that the leases BTT entered into with Contracting Plaintiffs violate 49 C.F.R. § 376.12 by failing to include certain required provisions and by including others that conflict with regulatory requirements.

2.    Enter a judgment declaring that BTT's lease agreements:

   1.    violate 49 C.F.R. §§ 376.12(d) and (g) by failing to disclose the terms of compensation;

   2.    (Deleted in compliance with Order on Informal Application, October 14, 2005.)

   3.    violate  49 C.F.R. § 376.12(h) by imposing undisclosed, undocumented and excessive charge-backs on Contracting Plaintiffs for fuel transactions, Comdata fees and insurance purchases; and

   4.    violate 49 C.F.R. § 376.12(k) by failing to comply with the escrow provisions of that subsection.

5.    Enter an injunction pursuant to 49 C.F.R. § 376.11(a) and 49 U.S.C. § 14704(a)(1) enjoining and restraining the Defendant from performing transportation, requiring DOT

24

authorization, in equipment it does not own until it enters into written lease agreements for such equipment meeting the requirements contained in 49 C.F.R. § 376.12.

6. Certify a class comprised of those lessors of motor vehicle equipment to BTT who, after June 2000, and through the pendency of this proceeding, have been or are parties to a lease agreement with BTT within the meaning of Part 376, Code of Federal Regulations.

7. Enjoin Defendant from any acts of retaliation, harassment, or intimidation against Contracting Plaintiffs and Class Members and others who may assist and/or participate in this action;

8. Order BTT to account for all of the sums by which it has been unjustly enriched at the expense of Contracting Plaintiffs from the use in interstate commerce of motor vehicle equipment leased under leases that did not comport with the Truth-in-Leasing regulations;

9. Order BTT to disgorge into a common fund for the benefit of the Contracting Plaintiffs and the class they seek to represent all of the sums by which BTT has been unjustly enriched at the expense of Contracting Plaintiffs and the class from the use in interstate commerce of motor vehicle equipment leased under leases that did not comport with the Truth-in-Leasing regulations;

10. Enter an order imposing a constructive trust for the benefit of the class upon all of the tangible assets of BTT;

11. Enter an order establishing the formula and or restitution grid by which the sums by which BTT has been unjustly enriched are to be distributed to the Class Members;

12. Enter an order awarding to the Contracting Plaintiffs reasonable attorney fees and expenses incurred in the prosecution of this action to be paid out of the common fund

before distribution to the Class Members;

13. Award damages to Contracting Plaintiffs and Class Members for injuries suffered as a result of BTT's violation of the Truth-in-Leasing regulations;

14. Award reasonable attorneys' fees and expenses pursuant to 49 U.S.C. § 14704(e); and

15. Award such other relief as this Court may deem to be just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

/s/ William B. McGuire_____
William B. McGuire, Esq. (WBM-4754)
Grant W. McGuire, Esq.   (GWM-1051)
Tompkins, McGuire,
Wachenfeld & Barry
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4070
(973) 622-3000


Paul D. Cullen, Sr. (Pro hac vice)
David A. Cohen, Esq.  (DAC-9546)
Randall S. Herrick-Stare  (Pro hac vice)
The Cullen Law Firm
1101 30th St., N.W.
Suite 300
Washington, D.C. 20007
(202) 944-8600


Of Counsel:
Peter G. Wales, Esq.
2508 Pacific Avenue
Virginia Beach, VA 23458
(757) 428-4237